UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TEXAS UJOINTS, LLC, a/k/a AUTOMOTIVE
INDUSTRIAL SUPPLY CO., INC.,

        Plaintiff,

    v.                                                Case No. 13-C-1008

DANA HOLDING CORPORATION and
MACHINE SERVICE, INC.,

        Defendants.

**ORDER DENYING MOTION TO REMAND**

This case was removed from state court pursuant to 28 U.S.C. § 1446. (Notice of Removal, ECF No. 1.) Plaintiff Texas Ujoints, LLC also known as Automotive Industrial Supply Company, Inc. (Texas Ujoints) claims that removal was improper and has filed a motion for remand for lack of federal jurisdiction. (Pl. Mot. to Remand, ECF No. 12.) For the reasons that follow, the motion will be denied.

**BACKGROUND**

According to the complaint, Texas Ujoints is a Texas Limited Liability Company engaged in the business of, among other things, distributing driveline products, drive shaft products, and other industrial products in Texas. (Compl. ¶ 1, ECF No. 1-1.) Some of the items distributed by Texas Ujoints include products manufactured by Defendant Dana Holding Corporation (Dana) or one of its subsidiaries. (*Id.*) Dana, a Delaware corporation with its principal place of business in

Ohio, supplies "driveline, sealing, and thermal-management technologies." (*Id.* at ¶ 2.) Defendant Machine Service, Inc. (MSI) is a Wisconsin corporation, with its principal place of business in Wisconsin. (*Id.* at ¶ 3.) MSI supplies drive shaft parts and assemblies in Texas as part of its business. (*Id.*)

In August 2012, according to the complaint, Texas Ujoints acquired the "goodwill, corporate name and all distributor rights" of Automotive Industrial Supply Company, Inc. (AISCO). (*Id.* at ¶ 4.) Texas Ujoints alleges that AISCO "acted as Dana's dedicated distributor in Texas" in two lines of Dana's products—Spicer and GWB—for over forty years, and Texas Ujoints succeeded to those distributor rights by "express or implied agreement and/or by novation" when it acquired AISCO. (*Id.* at ¶¶ 4–6.) Although Texas Ujoints, operating under the AISCO name, continued to distribute Dana's products for some amount of time after this acquisition, the relationship soured in 2013. (*Id.* at ¶¶ 7–9, 12.) In June 2013, Texas Ujoints claims that Dana improperly terminated this relationship. (*Id.* at ¶¶ 11–14.)

On August 7, 2013, Texas Ujoints filed suit in the Circuit Court for Brown County, Wisconsin, against Dana and MSI. The complaint alleges that the termination of the "Agreement" by Dana violated the Texas Distributors Act. (*Id.* at ¶¶ 18–25.) In addition to violating the Texas Distributors Act, Texas Ujoints claims Dana's actions constitute a breach of contract. (*Id.* at ¶¶ 26–28.) Finally, Texas Ujoints alleges "conspiracy and tortuous [sic] interference with contractual relationship" against MSI. (*Id.* at ¶¶ 29–34.) It seeks compensatory and punitive damages.

Dana removed this case pursuant to 28 U.S.C. §§ 1441 and 1446, claiming that the Wisconsin defendant, MSI, had been fraudulently joined to defeat federal diversity jurisdiction that

2

would otherwise exist under 28 U.S.C. § 1332. (Notice of Removal, ECF No. 1.) MSI consented to and joined the removal of the action. (ECF No. 3.) Texas Ujoints denies that MSI was fraudulently joined and seeks remand to the Circuit Court for Brown County.

There does not appear to be a dispute regarding the citizenship of the parties for diversity purposes. Dana is a citizen of Delaware and Ohio. MSI is a citizen of Wisconsin. Although Texas Ujoints is a Texas Limited Liability Company, it is a citizen of Wisconsin for diversity purposes because its is owned by a Wisconsin Limited Liability Company, which is owned by two individuals domiciled in Wisconsin. Thus, if Texas Ujoints did not fraudulently join MSI, there is not complete diversity and the case must be remanded.

**LEGAL STANDARD**

Federal jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship. In other words, jurisdiction under § 1332 exists only where "no party share[s] common citizenship with any party on the other side of the dispute." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir. 1992). But a plaintiff "may not join an in-state defendant solely for the purpose of defeating federal diversity jurisdiction." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999) (citing *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)). A party joined for this purpose is considered fraudulently joined and will be disregarded for purposes of determining whether there is complete diversity. *Poulos*, 959 F.2d at 73. Pursuant to the fraudulent joinder doctrine, a district court considering removal may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the

3

nondiverse defendants, and thereby retain jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009).

Despite its name, the fraudulent joinder doctrine does not require a showing that the plaintiff acted fraudulently or in bad faith. *Poulos*, 959 F.2d at 73. Although fraud is sufficient to make joinder fraudulent, "in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives." *Id*. The removing party bears a heavy burden of proof: "The defendant must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.* The fraudulent joinder inquiry is an "act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Id*. On the other hand, a party alleging fraudulent joinder "need not negate any possible theory that [the plaintiff] might allege in the future: only his present allegations count." *Id.* at 74.

**ANALYSIS**

Here, it is undisputed that MSI and Texas Ujoints are both citizens of Wisconsin for diversity purposes. Thus, on the face of the complaint, diversity jurisdiction does not exist and remand would be appropriate. In order to avoid remand, Defendants must establish that the claims against the Wisconsin defendant, MSI, have no reasonable possibility of success.

In its motion to remand, Texas Ujoints contends it has a colorable claim under Wisconsin law against MSI for tortious interference, requiring remand to state court and requesting attorneys fees as well as costs related to the improper removal of this case. (Pl. Mem. in Supp. of Mot. to Remand 4–8, ECF No. 13.) According to Texas Ujoints, the "unmistakable flaw" in Defendants'

4

removal is that the allegations in the complaint are assumed to be true, including that the protected distributorship agreement existed between AISCO and Dana, that Texas Ujoints succeeded to those rights, that MSI "knowingly interfered" with this agreement with the "purpose of inducing Dana to terminate the agreement," the alleged interference caused damages, and that MSI was not privileged to interfere. (*Id.* at 4–5.) Texas Ujoints relies exclusively on the allegations in its complaint, arguing that consideration of any documents outside of the complaint amount to "quasi-summary judgment motion." (Pl. Reply 2–4, ECF No. 24.) Looking only at the complaint, Texas Ujoints argues that it has stated a claim for tortious interference because it "provide[s] reasonable notice to the defendant regarding the nature of the claim." (*Id.* at 4.) In support of its position, Texas Ujoints advocates application of Wisconsin's more liberal notice pleading standard in contrast to the federal pleading standard as articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (*Id.* at 4–8.)

It is the Defendants' position that removal is appropriate because Texas Ujoints has no reasonable possibility of success on its claim for tortious interference against MSI. Defendants base this position on two arguments. First, Defendants argue that the complaint fails to state a claim for tortious interference with a contractual relationship because Texas Ujoints has alleged "no facts in support of its allegations of tortious interference" and rely solely upon "unsupported, conclusory allegations made upon 'information and belief.'" (Notice of Removal ¶ 20, ECF No. 1; Dana Opp'n 4, ECF No. 18; MSI Opp'n 1–2, ECF No. 20.) Second and alternatively, Defendants contend that MSI was privileged to interfere as a competitor of Texas Ujoints so long as the interference was not improper. (Notice of Removal ¶ 24–26, ECF No. 1; Dana Opp'n 5–6, ECF No. 18; MSI Opp'n 2–3,

5

ECF No. 20.) Because the complaint fails to allege that the interference was improper, Defendants argue that the joinder of MSI is fraudulent and the motion to remand should be denied.

The parties do not dispute that Wisconsin state law provides the substantive law for tortious interference with a contractual relationship. Under Wisconsin state law, "interference with a present or prospective contractual relationship requires proof of the following five elements: '(1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere.'" *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 44, 294 Wis. 2d 274, 717 N.W.2d 781 (quoting *Hoey Outdoor Adver., Inc. v. Ricci*, 2002 WI App 231, ¶ 27, 256 Wis. 2d 347, 653 N.W.2d 763). Instead, their disagreement focuses primarily on which pleading standard the court should look to for guidance when testing the sufficiency of a complaint in the fraudulent joinder context.

According to Defendants, because the complaint consists of unsupported allegations, legal conclusions, and a formulaic recitation of the cause of action, Texas Ujoints has no reasonable basis for recovery against MSI and it should be dismissed as fraudulently joined. (Dana Opp'n 3–5, ECF No. 18.) Defendants note that the complaint does not, for example, allege the "mode" of interference by MSI. (*Id.* at 7.) Rather, the complaint sets forth "unsupported, conclusory allegations made 'upon information and belief.'" (*Id.* at 4.) Defendants argue that Texas Ujoints "failed to allege even a single fact in support of its sole claim against MSI." (MSI Opp'n 1, ECF No. 20.) Defendants' conclusion flows from the application of the federal pleading standard, particularly *Twombly* and *Iqbal*. (Dana Opp'n 2–3, ECF No. 18.) In support of this position,

6

Defendants cite to a number of cases from district courts inside and outside the Seventh Circuit that "employ the standard applicable to a motion to dismiss for failure to state a claim.[1] (*Id.* at 2 (collecting cases).) At oral argument, Defendants further contended that the complaint would be insufficient even under Wisconsin pleading standards.

Texas Ujoints does not argue that its complaint satisfies the federal pleading standard. Rather, it contends that the federal pleading standard does not apply because the complaint was filed in Wisconsin state court prior to removal. (Pl. Reply 4, ECF No. 24.) According to Texas Ujoints, under the more liberal Wisconsin pleading standard, which does not incorporate the *Twombly* and *Iqbal* plausibility test, the complaint must only provide a short and plain statement that provides reasonable notice to the defendants about the nature of the claim. (*Id.*) Thus, because its pleading of tortious interference would be sufficient under Wisconsin rules, it is also sufficient to demonstrate that Texas Ujoints has a reasonable possibility of success against MSI in state court, MSI was not fraudulently joined, and the case should be remanded.

---

[1] Defendants also filed two declarations of MSI employees that seek to establish MSI did not interfere. (Decl. of John Brockman, ECF No. 21; Decl. of Bryan Schultz, ECF No. 23.) Texas Ujoints contends that the court should not consider these declarations on a motion to remand because it would transform the inquiry into a quasi-summary judgment. (Pl. Reply 3, ECF No. 24.) While the fraudulent joinder inquiry generally considers only the allegations in the complaint, the Seventh Circuit approved of a lower court looking beyond the pleadings in at least one circumstance. *Faucett v. Ingersoll–Rand Mining & Mach. Co.*, 960 F.2d 653, 655 (7th Cir. 1992) ("Minor's uncontradicted affidavit, essentially stating that he has had absolutely nothing to do with any roof-bolters at the Peabody Mine, is sufficient to establish fraudulent joinder. The district court correctly asserted jurisdiction over this case."). Nor is the Seventh Circuit alone in permitting a court to pierce the pleadings in this analysis. *E.g.*, *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012); *Legg v. Wyeth*, 428 F.3d 1317, 1322–23 (11th Cir. 2005); *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573–74 (5th Cir. 2004) (en banc); *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318–19 (9th Cir. 1998); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3rd Cir. 1985); *Dodd v. Fawcett Pubs., Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). In this case, however, it is unnecessary to consider the declarations because the matter can be resolved based solely on the complaint.

7

There is no clear case law from any circuit, including the Seventh Circuit, on the narrow issue of which pleading standard should inform the analysis of fraudulent joinder. Defendants' cite to a variety of district court cases, including some in the Seventh Circuit, in which the federal pleading standards were applied and *Twombly* specifically cited, to conclude that a defendant was fraudulently joined. (Dana Opp'n 2, ECF No. 18.) While Defendants are correct that those courts applied the federal pleading standard in their fraudulent joinder analysis, the persuasive force of these unpublished cases is limited because they provide little in the way of explanation for applying the federal standard rather than the state standard. *See, e.g.*, *Hoidas v. Wal-Mart Stores, Inc.*, 09-C-7409, 2010 WL 1790864, at *2 (N.D. Ill. Apr. 30, 2010) (applying *Twombly* without explanation); *Allen v. Monsanto Co.*, No. 3:08CV320/MCR, 2009 WL 426546, at *3 (N.D. Fla. Feb. 20, 2009) (applying Federal Rule of Civil Procedure 8(a) without explanation); *Pascale Serv. Corp. v. Int'l Truck and Engine Corp.*, No. 07-0247-S, 2007 WL 2905622, at *3 (D. R.I. Oct. 1, 2007) (finding that the federal pleading standard "recently clarified" by *Twombly* is "equally applicable" in fraudulent joinder without explanation). Defendants have not cited any controlling Seventh Circuit case law that establishes the application of the federal pleading standard regarding the sufficiency of the factual pleadings in a fraudulent joinder inquiry.

Texas Ujoints also lacks binding precedent to support its position that the state pleading standard governs. It argues that because the complaint was filed in state court prior to removal, the sufficiency should be analyzed under the Wisconsin pleading standard pursuant to *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 644 (7th Cir. 2008). (Pl. Reply 4, ECF No. 24.) But *Ciomber* is not a fraudulent joinder case. *See* 527 F.3d at 644. In *Ciomber*, the Seventh Circuit held that, under Federal Rule of Civil Procedure 81(c)(1) and *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119,

8

1122 (7th Cir. 2001), the plaintiff's contention that defendant's answer filed in state court admitted causation must be determined using Illinois civil rules because the answer was filed in Illinois state court before the case was removed. *Id.* While a broad interpretation of this holding arguably supports Texas Ujoints' position that state procedural law informs fraudulent joinder analysis because the complaint was filed before removal, the case is not controlling.

In fact, there are arguments for applying either standard. Federal Rule of Civil Procedure 81(c)(1) states: "These rules apply to a civil action after it has been removed from a state court." Although the rule appears straightforward, the unresolved question is how to interpret "after it has been removed from a state court." The parties have not cited to, and the court has not found in its own research, a Seventh Circuit case that resolves the interaction of Rule 81(c)(1), pleading standards, and fraudulent joinder analysis.

The argument for the federal pleading standard begins with the well-established general rule in diversity actions—federal courts apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. at 465; *Erie R. Co. v. Thompkins*, 304 U.S. 64 (1938). Further, the federal procedural rules apply in other circumstances even when the district court's jurisdiction is pending resolution. *Willy v. Coastal Corp.*, 503 U.S. 131, 134–135 (1992); *see generally* 14 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 81.04[3] (3d ed. 2011). In *Willy*, the Supreme Court upheld the district court's decision to impose Rule 11 sanctions, even though it was later determined that the court did not have subject matter jurisdiction. *Id.* at 137. Combining these two rules, the federal pleading standard should inform the fraudulent joinder analysis because this is a diversity action after removal is effected, even if jurisdiction is still technically pending. In effect, this argument interprets "after removal" to mean after notice of removal. *See* 1 Steven S. Gensler, FEDERAL

9

RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY, Rule 81 (2013). This conclusion is also supported by "the sounder rule, and the one most consistent with the language of Section 1446(d) of Title 28, [] that removal is not effective until the defendant has taken all the steps required by the federal statute." 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3736 (4th ed. 2013) (describing removal as a three step process: "filing a notice of removal in the federal court, filing a copy of this notice in the state court, and giving prompt written notice to all adverse parties"). As noted by Defendants, though cases have described fraudulent joinder as "more favorable to the plaintiff" than a motion to dismiss pursuant to Rule 12(b)(6), *Schur*, 577 F.3d at 764 (collecting cases), courts routinely recognize that the federal pleading standard can be a guide for part of the fraudulent joinder analysis. *E.g.*, *Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011, 1014 (E.D. Wis. 1999) ("The inquiry is similar to an analysis under Federal Rule of Civil Procedure 12(b)(6)."); *Delfosse v. Cont'l Cas. Co.*, 11-C-199, 2011 WL 2601277, at *2 n.1 (E.D. Wis. June 30, 2011) (recognizing the overlap between fraudulent joinder and motion to dismiss in some cases); *In re Yasmin & Yaz (DROSPIRENONE) Mktg., Sales Practices & Products Liab. Litig.*, 309-MD-02100-DRH-PMF, 2010 WL 1963202, at *4 (S.D. Ill. May 14, 2010) (determining that the non-diverse defendant was fraudulently joined because plaintiff failed to plead a causal connection and offered only "labels and conclusions") (quoting *Twombly*, 550 U.S. at 555).

Conversely, the argument for application of the state pleading standard in fraudulent joinder relies on the fact that a motion to remand contests the removal itself. This distinction is particularly relevant when the removing party asserts fraudulent joinder because the test for fraudulent joinder asks whether the plaintiff has a reasonable possibility of success on the claim against the non-diverse defendant in state court under state law. *Poulos*, 959 F.2d at 73 ("At the point of decision,

10

the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?"). According to this interpretation, the application of federal procedural law when attempting to predict if a state court might rule against the non-diverse defendant is a non sequitur. *In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.*, 889 F. Supp. 2d 931, 940 (E.D. Ky. 2012) ("It makes little sense to measure the state-law viability of such claims, which were originally filed in state court, by federal pleading standards."); *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 624 F. Supp. 2d 396, 417 (E.D. Pa. 2009) ("The Court measures the adequacy of Plaintiffs' factual allegations and legal claims against the legal standards of California, the state where this action was originally filed."); *Kuperstein v. Hoffman–La Roche, Inc.*, 457 F. Supp. 2d 467, 471–72 (S.D.N.Y. 2006) ("Although there is no question that the substantive law of the forum state controls in determining whether a plaintiff's complaint states a cause of action in the context of motions to remand, courts in this Circuit have referenced both state and federal pleading standards when testing the sufficiency of a plaintiff's pleading. Because the purpose of fraudulent joinder analysis is to determine whether a state court might permit a plaintiff to proceed with his claims, I will refer to the state pleading standards as they have been applied by state courts to similar claims."). According to this line of cases, when fraudulent joinder is at issue, "after removal" in Rule 81 is better understood to mean after the decision on the motion to remand.

In this case, I need not resolve this question because Texas Ujoints' complaint falls far short under either standard. Under both the federal and Wisconsin pleading standards the complaint is insufficient and there is no reasonable possibility that Texas Ujoints can prevail in state court on its claim for tortious interference with a contractual relationship against MSI. *See Poulos*, 959 F.2d

11

at 73. Texas Ujoints has no reasonable possibility of success in state court because it has failed to allege any facts in its complaint or otherwise in support of its motion to remand that demonstrate that MSI or one of its employees said or did anything to interfere in Texas Ujoints' contractual relationship.

The complaint filed by Texas Ujoints makes few factual allegations against MSI. The complaint identifies MSI as a Wisconsin corporation operating in Green Bay, Wisconsin and describing part of its business. (Compl. ¶ 3, ECF No. 1-1.) But the complaint does make any further direct allegations against MSI until Count Three, entitled "Conspiracy and Tortuous [sic] Interference with Contractual Relationship." (*Id.* at 6.)

An initial reading of Count Three would suggest that it contains two separate claims: civil conspiracy and tortious interference with a contractual relationship. However, the allegations never discuss a conspiracy, allege any facts related to a conspiracy, or allege any of the elements of a civil conspiracy under Wisconsin state law. *See Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, ¶ 168, 285 Wis. 2d 236, 701 N.W.2d 523 (" 'To state a cause of action for civil conspiracy, the complaint must allege: (1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts.' ") (quoting *Onderdonk v. Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507 (1977)). Moreover, Texas Ujoints focuses its briefing exclusively on tortious interference and makes no argument related a claim for civil conspiracy. (Pl. Mot. to Remand, ECF No. 12; Pl. Reply, ECF No. 24.) Thus, to the extent Texas Ujoints intended to make a claim for conspiracy, its complaint is obviously insufficient and there is no reasonable possibility of success on that claim.

12

As for the allegations related to tortious interference, they are vague and conclusory. The complaint alleges that MSI "had knowledge of the Agreement" and that, as another distributor in the area, "had a material interest and economic incentive in not having AISCO distribute...in Texas." (Compl. ¶¶ 30–31, ECF No. 1-1.) The complaint then alleges the following interference: "Upon information and belief, MSI knowingly interfered with the obligations of the Agreement for the purpose of getting Dana to terminate the Agreement in violation of the Texas Distributors Act as well as AISCO's other rights." (*Id.* at ¶ 32.) The complaint finally alleges that "MSI was not justified or privileged to interfere" and that Texas Ujoints suffered damages "[a]s a direct and proximate result of the interference by MSI." (*Id.* at ¶¶ 33–34.) Only one other factual allegation elsewhere in the complaint is even indirectly related to MSI: "In April 2013, Dana and GWB approached AISCO and complained that AISCO was 'hurting the market,' indicating that AISCO was competing with its favored and larger dealer MSI." (*Id.* at ¶ 12.) No allegation even suggests the mode or method of interference, and Texas Ujoints has not even generally described what actions or statements by MSI or one of its employees constituted interference. *See* WI JI-CIVIL 2760 (2006) ("An interference may consist of any conduct or words conveying to (3rd party) the defendant's desire to influence (3rd party) to refrain from dealing with the plaintiff. It could be a simple request or persuasion, exerting only moral pressure, as well as threats or promises of some benefit to (3rd party).")

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the…claim is and the grounds upon which it rests."

13

*Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). "[T]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Under Wisconsin rules for notice pleading, a complaint must contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." Wis. Stat. § 802.2(1)(a). Wisconsin state courts have not applied *Iqbal* or *Twombly* in motions to dismiss and, in some respects, recognize a more liberal standard for notice pleading. *See, e.g.*, *Notz v. Everett Smith Grp., Ltd.*, 2009 WI 30, ¶ 15, 316 Wis. 2d 640, 764 N.W.2d 904 ("A claim will be dismissed only if 'it appears quite certain that no relief can be granted under any set of facts the plaintiffs might prove in support of their allegations.' ") (quoting *Peterson v. Volkswagen of Am., Inc.*, 2004 WI App 76, ¶ 2, 272 Wis. 2d 676, 679 N.W.2d 840). But while pleadings are liberally construed and facts pleaded are accepted as true, facts not pleaded cannot be added and legal conclusions and unreasonable inferences need not be accepted. *Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 20, 284 Wis. 2d 307, 700 N.W.2d 190. Further, a " 'bare conclusion [does] not

14

fulfill[] a plaintiff's duty of stating the elements of a claim in general terms.'" *Id.* at ¶ 36 (quoting *Wilson v. Cont'l Ins. Cos.*, 87 Wis. 2d 310, 319, 274 N.W.2d 679 (1979)). A Wisconsin state court "will dismiss a complaint if, '[u]nder the guise of notice pleading, the complaint before us requires the court to indulge in too much speculation leaving too much to the imagination of the court.'" *Id.* (quoting *Wilson*, 87 Wis. 2d at 326–27). "It is not enough for the plaintiff to contend that the requisite facts will be 'supplied by the discovery process.'" *Id.* (quoting *Wilson*, 87 Wis. 2d at 327).

As discussed above, the complaint does not allege any method or mode of interference by MSI in the contractual relationship between Dana and Texas Ujoints. The parties identify just two sentences in the complaint related to MSI's interference. First, the complaint alleges "[u]pon information and belief, MSI knowingly interfered with the obligations of the Agreement for the purpose of getting Dana to terminate the Agreement in violation of the Texas Distributors Act as well as AISCO's other rights." (Compl. ¶ 32, ECF No. 1-1.) Under the federal pleading standard, this type of formulaic recitation and conclusory allegation is disregarded and need not be accepted as true. *Iqbal*, 556 U.S. at 678. Because this is the only direct allegation of any interference by MSI, there are no facts alleged in the complaint to make the tortious interference claim "plausible on its face." *Id.* at 696 (quoting *Twombly*, 550 U.S. at 570).

Even under the more liberal Wisconsin pleading standard, this "bare conclusion" is insufficient. *Doe*, 2005 WI at ¶ 36. Texas Ujoints must allege facts that identify the "transaction or occurrence or series of transactions or occurrences out which the claim arises." Wis. Stat. § 802.02(1)(a). Nothing in the allegation identifies any circumstance, occurrence, or event that supports the tortious interference claim by Texas Ujoints against MSI because it is not a factual allegation that implicates any action or statement by MSI. *See Doe*, 2005 WI at ¶ 36 ("The notice

15

pleading rule, while 'intended to eliminate many technical requirements of pleading,' nevertheless requires the plaintiff to set forth 'a statement of circumstances, occurrences and events in support of the claim presented.' ") (quoting Charles D. Clausen & David P. Lowe, THE NEW WISCONSIN RULES OF CIVIL PROCEDURE, Chapters 801–803, 59 Marq. L. Rev. 1, 54 (1976)).

Second, at oral argument, the parties focused on an allegation earlier in the complaint: "In April 2013, Dana and GWB approached AISCO and complained that AISCO was 'hurting the market,' indicating that AISCO was competing with its favored and larger dealer MSI." (Compl. at ¶ 12, ECF No. 1-1.) Looking to the federal standard, this allegation about Dana is not "factual content that allows the court to draw the reasonable inference" that MSI is "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). It only refers to MSI; it describes no action by MSI. Even assuming this allegation is true, this single sentence is not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

This allegation fairs no better under the Wisconsin pleading standard. From this one-sentence allegation about a conversation between Dana and Texas Ujoints two months before the alleged termination of the agreement, Texas Ujoints contends that the "reasonable inference" is that MSI tortiously interfered with the contractual relationship. But as with the "bare conclusion" discussed above, this allegation provides no facts about the transaction, occurrence, or event that suggests MSI interfered or shows that Texas Ujoints is entitled to relief. *See Doe*, 2005 WI at ¶ 36. This allegation fails to provide " 'sufficient detail...so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some basis for recovery.'" *Midway Motor Lodge of Brookfield v. Hartford Ins. Grp.*, 226 Wis. 2d 23, 25, 593 N.W.2d 852

16

(Wis. Ct. App. 1999) (quoting *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis. 2d 381, 404, 497 N.W.2d 756 (Wis. Ct. App. 1993)). Moreover, it is not reasonable to infer that MSI said or did anything to interfere based on a statement attributed to Dana when nothing more than speculation connects MSI to Dana's statement about market competition. *See Doe*, 2005 WI at ¶ 36. At best, the allegation demonstrates that Dana was concerned about the competition in the market, not that MSI was concerned or made any statement or took any action to encourage the termination of the business relationship. Even in Wisconsin's liberal notice pleading standard, a complaint will be dismissed if it "requires the court to indulge in too much speculation leaving too much to the imagination of the court." *Id.* Consequently, the complaint is "completely devoid of factual allegations" and would not survive in Wisconsin state court. *See id.*

Thus, Texas Ujoints has failed to state a claim for conspiracy or tortious interference with a contractual relationship under either pleading standard against MSI. Further, I find that Texas Ujoints has no reasonable possibility of success against MSI in state court because it failed to plead any facts describing any aspect of MSI's supposed interference. Therefore, MSI was fraudulently joined.

Sound policy supports this conclusion. The doctrine of fraudulent joinder "is designed to strike a reasonable balance among the policies to permit plaintiffs the tactical prerogatives to select the forum and the defendants they wish to sue, but not to reward abusive pleading by plaintiffs, and to protect the defendants' statutory right to remove." *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (internal quotation marks and citations omitted). Although the removing party faces a high burden to establish fraudulent joinder, it cannot be an insurmountable one; otherwise neither policy goal is served. *Poulos*, 959 F.2d at 74 ("If Poulos' theory were right, he could defeat diversity

17

jurisdiction by joining his grandmother as a defendant—surely some set of facts might make her liable."). Plaintiffs who provide threadbare pleadings with little or no factual allegations against non-diverse defendants (regardless of the reason) run afoul of this balance and, in the process, waste the resources of courts and raise the cost of an already expensive system of justice. Similar policy goals—avoiding unnecessary costs to defendants and wasting scarce judicial resources on meritless suits—underlie the federal pleading standard. *E.g.*, *Twombly*, 550 U.S. at 557–59.

## CONCLUSION

For the reasons given above, the motion to remand is **DENIED**. Defendant Machine Services, Inc. is dismissed from this action. Texas Ujoints' motion for costs, expenses, and attorneys' fees is also **DENIED** as moot. The Clerk is directed to set this matter on the Court's calendar for a telephonic scheduling conference pursuant to Fed. R. Civ. P. 16.

**SO ORDERED** this   2nd   day of December, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
