UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TEXAS UJOINTS, LLC,

        Plaintiff,

  v.                                                Case No. 13-CV-1008

DANA HOLDING CORPORATION and
DANA LIMITED,

        Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION

In this diversity suit arising under the Texas Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act (FPA), Plaintiff Texas Ujoints LLC (Texas Ujoints) claims Defendants Dana Holding Corporation and Dana Limited (together "Dana") violated the FPA by terminating a "dealer agreement" without good cause. *See* Tex. Bus. & Com. Code Ann. § 57.153. Jurisdiction is based on 28 U.S.C. § 1332, as Plaintiff is an LLC the membership of which ultimately traces to Wisconsin residents Daniel Zahn and Martin Brown, Defendant Dana Holding Corporation is a Delaware corporation with its principal place of business in Ohio, and Defendant Dana Limited is an LLC the membership of which ultimately traces to Dana Holding Corporation.

The case is before the court on Dana's motion for reconsideration of the court's May 30, 2015 order denying Dana's motion for summary judgment and granting Texas Ujoints' motion for summary judgment as to liability. The parties have filed briefs on Dana's motion and the court has held oral argument. For the reasons below, the motion for reconsideration will be granted and summary judgment will be entered in favor of Dana.

## BACKGROUND

The court's summary judgment decision centered on an asset purchase agreement (APA) under which an entity Daniel Zahn and Martin Brown created called DanMar Holdings LLC acquired substantially all of the assets of a Texas company called Automotive Industrial Supply Co., Inc. (AISCO). The primary purpose of the transaction was for Zahn and Brown's entity to acquire AISCO's purported right, based on an alleged oral agreement, to distribute Dana's "GWB" product line, which consists of heavy duty industrial drive lines and universal joints used in the fracking industry among others. Following the August 24, 2012 APA, the assets acquired thereunder were transferred from DanMar Holdings to Texas Ujoints LLC through a separate agreement. It is undisputed that Dana did not consent to the sale of AISCO's assets, including the alleged right to distribute Dana's product. In fact, during negotiations over the terms of the APA, Zahn asked Gary Stoddard, the owner of AISCO, to guarantee Zahn's access to the GWB product "once Dana detects the change in ownership." Stoddard refused, but Zahn and Brown decided to go through with the APA anyway.

It is also undisputed that no written distributorship agreement existed at any time between Dana and AISCO nor between Dana and Texas Ujoints. It is undisputed that AISCO continued to exist as a corporate entity after the APA was executed. And although representatives of Dana did meet Texas Ujoints' Zahn and Brown following the acquisition of AISCO's assets, Zahn and Brown did not make it clear to Dana that it was dealing with a new entity that was separate from AISCO. Dana's representative did make one thing clear, however, telling Zahn and Brown "I don't care what you are going to do or how you are going to do it as long as it includes this man," pointing to Stoddard, the individual with whom Dana was familiar. Tr. of Dep. of Gary Stoddard at 70:6–8,

2

ECF No. 73-2. In any event, after an unspecified number of sales between the parties in early 2013, on June 12, 2013, Dana's sales manager notified Zahn that Dana had reached a decision not to enter into any long term distributorship agreement with Zahn's company. Dana's position is that the parties' dealings up until that point show that Zahn's company was merely "auditioning" to become an "authorized distributor" of Dana's product, but that after considering a business plan put forth by Zahn, Dana decided not to enter into any long term relationship with Zahn's company. Dana maintains that any orders that were filled before that time were filled under AISCO's account, and that Dana did not know that Texas Ujoints was an entity separate from AISCO until after it provided the June 12, 2013 notice.

Texas Ujoints contends that Dana's notification constituted a termination without cause of its statutorily-protected "dealer agreement" with Dana. Although there is no evidence that Dana ever expressly agreed to grant any distributorship rights to Texas Ujoints, Texas Ujoints maintains that (1) it succeeded to the distributorship rights of AISCO by virtue of the APA and the organization agreement conveying property from DanMar Holdings to Texas Ujoints, and (2) Dana's dealings with Texas Ujoints after the APA establish that Dana entered into a new "dealer agreement" directly with Texas Ujoints.

Dana moved for summary judgment on the grounds that no "dealer agreement" was actually transferred under the APA and that any agreement that did exist between Dana and Texas Ujoints was unenforceable under Texas's statute of frauds as an oral contract for the sale of goods in excess of $500. The court rejected the latter argument because Texas Ujoints' claim was a statutory claim, and the court is not aware of any authority supporting the application of a statute of frauds defense against a statutory claim (as opposed to a claim for breach of contract). The court rejected the

3

former argument because Dana was not a party to the APA. Although Dana argued that the lack of any term in the APA explicitly referring to the alleged AISCO distributorship rights meant no such rights could have been acquired by DanMar and then transferred to Texas Ujoints, the court rejected this argument, noting that a third party cannot assert a contract-formation defense in a suit against it by an assignee. The court observed that Texas Ujoints had pointed to a provision of the APA that arguably transferred AISCO's purported distributorship rights, and also noted that the transfer of such rights appeared to have been the primary purpose of the transaction according to the understanding of the parties to the APA. Accordingly, Dana's motion for summary judgment was denied.

Texas Ujoints also moved for summary judgment as to liability on its claim (the only remaining claim in the case) that Dana terminated its dealer agreement without cause. As noted above, Texas Ujoints argued it acquired the "dealer agreement" from AISCO and alternatively that Dana entered into a dealer agreement directly with Texas Ujoints by virtue of the parties' dealings after the APA was executed. The court did not reach the second argument because it found the first argument dispositive.

As relevant for present purposes, the essence of the court's decision was that (1) Dana and AISCO had a "dealer agreement"; (2) that agreement was assigned to Texas Ujoints; and (3) that agreement was terminated by Dana without cause on June 12, 2013. In response to Texas Ujoints' motion for summary judgment, Dana had argued that it had good cause to terminate any dealer agreement that did exist between it and AISCO because AISCO had undisputedly sold its assets under the APA. The FPA provides that "good cause for termination of a dealer agreement exists" if "there has been a sale or other closeout of a substantial part of the dealer's assets related to the

4

business." § 57.154(a)(4). The court rejected Dana's argument based on a perceived conflict between a straightforward reading of section 57.154(a)(4) and section 57.102 of the FPA, the latter of which neither party had cited in any of the summary judgment briefs. The court reasoned: "In essence, § 57.102 ensures that a supplier's consent to a sale cannot be unreasonably withheld in cases in which the supplier's consent is contractually required. Where, as here, the supplier's consent is not contractually required, the necessary implication is that the dealer may freely transfer its business without such consent." ECF No. 90 at 12. The court considered this interpretation of the statute consistent with the general rule that contracts for the sale of goods are freely assignable.[1] This reasoning led the court to the following conclusion:

> What § 57.154(a)(4) must mean, then, is that a supplier has good cause to terminate a dealer agreement where "there has been a sale or other closeout of a substantial part of the dealer's assets related to the business" *without an assignment of the dealership agreement or, in cases where consent of the supplier is contractually required, the dealer has either transferred the business without notice to the supplier or the supplier's consent has been reasonably denied*. Any other reading of § 57.154(a)(4) would place it in direct conflict with § 57.102. It thus follows that AISCO's sale of its assets to DanMar does not constitute grounds for terminating Dana's dealer agreement with AISCO. It also follows that AISCO was entitled under the FPA to transfer its rights under its dealer agreement with Dana to DanMar and DanMar, in turn was entitled to transfer them to [Texas Ujoints].

*Id.* at 12 (emphasis added). Having concluded that Texas Ujoints acquired AISCO's dealer agreement, the court then rejected Dana's separate statute of frauds defense, and concluded that Dana's June 12, 2013 notice to Zahn that it would not distribute GWB product to Zahn's business constituted a termination without cause under the FPA.

---

[1] Although personal service contracts are generally not assignable at common law, as Dana had pointed out in support of its statute of frauds defense, distributorship agreements are considered contracts for the sale of goods under Texas law.

5

Accordingly, the court granted Texas Ujoints' motion for summary judgment as to liability. The matter was set for further scheduling regarding damages but not before Dana timely filed the instant request for reconsideration.

**ANALYSIS**

Generally, "'[m]otions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence.'" *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 252 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656 (N.D. Ill. 1982), *aff'd* 736 F.2d 388 (7th Cir. 1984))). A motion for reconsideration should not serve "as the occasion to tender new legal theories for the first time." *Id.*

On the other hand, the Seventh has also stated that "a motion for reconsideration performs a valuable function where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). This court has likewise stated that "[r]econsideration is a useful mechanism when the court has clearly erred and immediate correction will save time and expense in the long run." *Eivaz v. Edwards et al.*, No. 12-CV-910, 2015 WL 59347, *1 (E.D. Wis. Jan. 5, 2015). And although law-of-the-case principles dictate that district courts should exercise caution in granting motions for reconsideration, 18B WRIGHT, MILLER & COOPER, FED. PRAC. & PROC.: JURIS. § 4478.1, at 692 (2d ed. 2002), district courts have inherent authority to correct themselves any time before final judgment has been entered. *Moses H. Cone Memorial Hosp. v. Mercury Const.*

6

*Corp.*, 460 U.S. 1, 12 & n.14 (1983); Fed. R. Civ. P. 54(b).

In this case, several factors lead me to conclude that reconsideration is warranted. First, although Texas Ujoints argues that Dana improperly advances new legal theories on reconsideration, because Dana unquestionably argued on summary judgment that it had good cause to terminate under section 57.154(a)(4), I find that Dana did not waive any argument it now makes. In truth, Dana makes new arguments only because the court raised the statutory construction issue sua sponte. For that reason, Dana argues persuasively that it *must* be provided an opportunity to be heard. In any event, I conclude that Dana did not waive the argument it makes on reconsideration.

Second, relatedly, the issue that the court ultimately found to be dispositive was not briefed by the parties. The court addressed an issue outside the adversarial issues presented to the court in the summary judgment briefs, which is a good reason to reconsider. Third, the court's summary judgment decision involved an issue of first impression under the FPA, which means it is conceivable that the decision could have an effect on the dealings of dealers and suppliers in Texas.

Fourth and most importantly, the court believes the reasoning that led to the summary judgment decision was flawed. The court essentially re-wrote the good-cause provision of the FPA ("What § 57.154(a)(4) must mean, then, is that a supplier has good cause to terminate a dealer agreement where 'there has been a sale or other closeout of a substantial part of the dealer's assets related to the business' *without an assignment of the dealership agreement or, in cases where consent of the supplier is contractually required, the dealer has either transferred the business without notice to the supplier or the supplier's consent has been reasonably denied*"). The reason the court felt the need to do so was the belief that section 57.102 implied that dealer agreements must be freely assignable ("Where, as here, the supplier's consent is not contractually required, *the*

7

*necessary implication* [of § 57.102] *is that the dealer may freely transfer its business without such consent.*"). The court also believed such an implication would render the statute consistent with common law because, as noted, agreements for the sale of goods are generally assignable.

As Dana points out in its motion for reconsideration, however, such an interpretation is not consistent with the plain meaning of the words in the good-cause provision. The FPA unequivocally states, in a subsection that the court had not previously considered, that a supplier has good cause to terminate a dealer agreement if "the dealer or dealership has transferred a controlling ownership interest in its business without the supplier's consent." § 57.154(a)(2). Therefore, regardless of whether a distributorship agreement would be assignable without the consent of the supplier under Texas common law, the Texas legislature directly addressed the transferability of a "dealer agreement" under the FPA: selling a dealership without the supplier's consent is grounds for termination without notice or an opportunity to cure. All section 57.102 adds is the explicit protection that in cases where the supplier has retained contractual authority to approve or deny a sale *and the dealer actually requests such approval*, the supplier may not unreasonably withhold it. That section, read properly and in conjunction with 57.154(a)(2), does not imply that any dealer can freely sell the dealership without the supplier's consent.

With this fuller understanding of the import of section 57.102, the good-cause provision that Dana actually invoked, section 57.154(a)(4), can be given its ordinary meaning and applied straightforwardly. Under section 57.154(a)(4), Dana had good cause to terminate any dealer agreement Texas Ujoints acquired from AISCO because it is undisputed that AISCO sold substantially all of its assets to Texas Ujoints. Indeed, this interpretation is not only straightforward, but—contrary to the court's understanding at the time of the prior order—this interpretation is

8

consistent with common law. An assignee cannot assert any greater rights than the assignor could assert. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Texas 2000). Yet that is what allowing Texas Ujoints to assert a claim against Dana after the asset sale would amount to.

In response to Dana's motion for reconsideration, Texas Ujoints argues that Dana failed to address the court's other reason for rejecting Dana's good-cause argument. In addition to the statutory construction issue, discussed above, the court also noted that "the problem with [Dana's good-cause argument] is that Dana did not terminate the dealer agreement when it first learned of the APA. It continued to do business with [Texas Ujoints] for several months." ECF No. 90 at 11. However, Dana's reply brief addresses this issue, and it leaves no doubt that this was not a valid reason to reject Dana's argument because Dana did not even know about the APA until after it had decided not to enter into a long-term business relationship with Zahn. It was not until Zahn replied to Dana's June 12, 2013 notice that Dana learned Texas Ujoints' position that it had acquired a "dealer agreement" from AISCO. Dana therefore cannot be faulted for failing to terminate a dealership it did not believe even existed.

Finally, having reconsidered and rejected Texas Ujoints' first theory of liability (i.e. that Dana terminated the dealer agreement Texas Ujoints acquired from AISCO) it becomes necessary to address Texas Ujoints' alternative theory: that the parties independently entered into a dealer agreement through their dealings directly with each other. As noted in the prior order, although the FPA's definition of a "dealer agreement" is broad,[2] "to establish a dealer agreement with a supplier,

---

[2] The FPA defines a "dealer agreement" as "an oral or written agreement or arrangement, of definite or indefinite duration, between a dealer and a supplier that provides for the rights and obligations of the parties with respect to the purchase or sale of equipment or repair parts." *Id.* § 57.002(4).

9

a business must do something more than simply pay the purchase price on a few orders. There must be a formal or informal agreement—i.e., a manifestation of mutual assent by the parties, that gives rise to rights and obligations on both their parts." ECF No. 90 at 8. Here, there is no genuine dispute of fact as to whether Dana entered into any kind of agreement with Texas Ujoints. Texas Ujoints' response to Dana's contention that no agreement existed does not raise a genuine issue of fact: Texas Ujoints claims Dana's representative's statement—"I don't care what you are going to do or how you are going to do it as long as it includes this man"—was Dana's "approval of the continuation of the relationship" Dana had with AISCO. Pl.'s Resp. to Dana's Prop. Findings of Fact ¶ 44, ECF No. 81. But a party cannot surreptitiously enter into an agreement with another party. That is what Texas Ujoints tried to do here.

In sum, because no evidence suggests Dana entered into an agreement with Texas Ujoints, and because Dana had good cause to terminate any agreement Texas Ujoints acquired from AISCO, Dana is entitled to summary judgment.[3]

**CONCLUSION**

For these reasons, Dana's motion for reconsideration is **GRANTED.** The court's May 30, 2015 decision and order granting Texas Ujoints' motion for summary judgment and denying Dana's

---

[3] Dana has also requested that the court clarify that this case is about Dana's GWB product. The court has understood this case to be about the alleged wrongful termination of Texas Ujoints' right to distribute Dana's GWB product (as opposed to Dana's "Spicer" product, which Texas Ujoints apparently also sold, and which Texas Ujoints apparently continued to sell until after this case was filed), because that is the claim Texas Ujoints pled in its complaint. Am. Compl. ¶ 15, ECF No. 36. To the extent Texas Ujoints seeks to assert an FPA claim arising out of alleged rights to distribute the Spicer product (*see* Pl.'s Reply in Supp. of Mot. for Summ. J. at 10 n.9, ECF No. 85), it can file a separate action asserting such claim.

10

is vacated, and Dana's motion for summary judgment dismissing the action is granted. The Clerk is directed to enter judgment forthwith.

Dated this  21st  day of December, 2015.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court